1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4             v.                        15 CV 861 (JMF)

5  HENRY NEVILLE,

6                  Defendant.

7  ------------------------------x

8                                       New York, N.Y.
                                        May 19, 2016
9                                       2:30 p.m.

10

   Before:
11
                      HON. JESSE M. FURMAN,
12
                                        District Judge
13

14                         APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    ANDREA GRISWOLD
17  CHRISTINE MAGDO
         Assistant United States Attorney
18
    BARRY BOHRER
19       Attorney for Defendant Neville

20  ALSO PRESENT:  CRAIG MINSKY, FBI
    VIRGINIA FAUGHNAN, USPIS
21

22

23

24

25

1          (Case called)

2          MS. GRISWOLD:  Good afternoon.

3          Andrea Griswold, for the government.  I'm joined at

4    counsel table by Special Agent Craig Minsky, of the FBI and

5    U.S. Postal Inspector Virginia Faughnan.

6          THE COURT:  Good afternoon.

7          MR. BOHRER:  Good afternoon, your Honor.

8          For Mr. Neville, who is next to me, Barry Bohrer, with

9    me is Marguerite Gardiner, co-counsel.

10          THE COURT:  Good afternoon to you as well.

11          Good afternoon, Mr. Neville, you may be seated.

12          All right.  My understanding is that the defendant is

13    making his initial appearance in court but also intends to

14    waive indictment and plead guilty to superseding information

15    that would be S2 15 CR 861.  Is that correct?

16          MR. BOHRER:  That is correct.

17          THE COURT:  All right.  Mr. Neville, my name is Jesse

18    Furman.  I'm a United States district judge here in this

19    district and have been assigned to this case and would be the

20    judge to preside over trial if your case were to go to trial

21    but it doesn't look like that's the direction it's headed and

22    would the judge to impose sentence upon you if it gets to that

23    as well.

24          The purpose of today's proceeding as I just indicated

25    and as I understand is for you to make an initial appearance in

1    this district and to waive indictment and to plead guilty.

2          Before I do that though, Ms. Griswold, I assume the

3    date and time of arrest would be sometime earlier today

4    voluntary surrender; is that correct?

5          MS. GRISWOLD:  Yes, your Honor.

6          THE COURT:  What time was that?

7          MS. GRISWOLD:  11 a.m.

8          THE COURT:  All right.  And I understand that the

9    defendant is a citizen of the United Kingdom; is that correct?

10         MS. GRISWOLD:  Yes.

11         THE COURT:  I believe the consular notification is not

12   required or mandatory but is entitled if he wishes, is that

13   correct?

14         MS. GRISWOLD:  Yes, your Honor, that's my

15   understanding.

16         THE COURT:  All right.  Mr. Bohrer, would the

17   defendant like his consolate to be notified?

18         MR. BOHRER:  No, your Honor.

19         THE COURT:  OK.  Mr. Neville, let me advise you of

20   certain rights that you have and I'll advise you of some

21   additional rights in due course but at the outset you are not

22   required to make any statements to authorities, that anything

23   you say can be used against you in and if you have made

24   statements in the past you still have the right to remain

25   silent going forward.

1          I also advise you that you have the right to be

2   represented by a lawyer and if you cannot afford a lawyer you

3   have the right to request that the Court appoint one for you.

4          With that, I would propose that we proceed into the

5   waiver of indictment and guilty plea and we'll need to take

6   care of bail but I would propose that we table that until the

7   end of the proceeding if everybody's OK with that.

8          MS. GRISWOLD:  Yes, your Honor.

9          MR. BOHRER:  Yes.

10         THE COURT:  All right.  Very good.  So you can all

11  have a seat otherwise you may get tired.

12         But, Mr. Neville, before I accept your waiver of

13  indictment and guilty plea I need to ask you certain questions

14  to insure among other things, that you wish to plead guilty

15  because you are, in fact, guilty and not for some other reason,

16  to insure that you understand the rights that you are giving up

17  by pleading guilty and that you understand the potential

18  consequences of your guilty plea.

19         If you do not understand any of my questions it is

20  critical that you let me know that because you do need up to

21  understand my question before you answer it any question.  And

22  if at any time you'd like to speak with your lawyers for

23  whatever reason, just let me know that and I'm happy to you

24  give you however much time you would like to speak with them.

25  Do you understand all that?

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  I'll ask my deputy to administer the oath

3   to Mr. Neville.

4        (Defendant Henry Neville sworn)

5        THE COURT:  You may be seated.

6        You are now under oath, which means that you may be

7   subject to prosecution for a separate crime of perjury if you

8   answer any of my questions falsely.  Do you understand that?

9        THE DEFENDANT:  Yes, your Honor.

10       THE COURT:  All right.  If you want to just move the

11  microphone closer to you, you can stay seated.

12       What is your full name?

13       THE DEFENDANT:  Michael Henry Neville.

14       THE COURT:  How old are you?

15       THE DEFENDANT:  57.

16       THE COURT:  How far did you go in school?

17       THE DEFENDANT:  I have a graduate diploma.

18       THE COURT:  Is that here in the United States?

19       THE DEFENDANT:  In the UK.

20       THE COURT:  Have you ever been treated or hospitalized

21  for any mental illness?

22       THE DEFENDANT:  No, I have not.

23       THE COURT:  All right.  I know that in the Pretrial

24  Services report that I received there is an indication that you

25  were diagnosed with an anxiety or depression disorder last

1  year; is that correct?

2           THE DEFENDANT:  That's correct, yes.

3           THE COURT:  Were you treated for that?

4           THE DEFENDANT:  No, I was not.

5           THE COURT:  Is there anything about that that would

6  interfere with your ability to understand what's going on here

7  today?

8           THE DEFENDANT:  I don't believe so, no, your Honor.

9           THE COURT:  All right.  Have you ever been treated or

10  hospitalized for any type of addiction including drug or

11  alcohol addiction?

12           THE DEFENDANT:  No, I have not.

13           THE COURT:  Are you now or have you recently been

14  under the care of a doctor or psychiatrist?

15           THE DEFENDANT:  No, I have not.

16           THE COURT:  In the last 48 hours have you taken any

17  pills, medicine, drugs or had any alcohol?

18           THE DEFENDANT:  I have had two beers, yes.

19           THE COURT:  When was that?

20           THE DEFENDANT:  Last night before supper.

21           THE COURT:  And anything about that that would

22  interfere with your ability to understand what's happening

23  here?

24           THE DEFENDANT:  No, your Honor.

25           THE COURT:  Is your mind clear today?

G5JAANEVP                    Plea

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Do you understand what is happening here

3    today?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  All right.  Mr. Bohrer, you discussed this

6    matter with Mr. Neville?

7              MR. BOHRER:  Yes.

8              THE COURT:  Does he understand the rights that he

9    would be giving up by pleading guilty?

10             MR. BOHRER:  Yes.

11             THE COURT:  In your judgment is he capable of

12   understanding the nature of these proceedings?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Does either counsel have any doubt as to

15   the defendant's competence to waive indictment and plead guilty

16   at this time?

17             MS. GRISWOLD:  No, your Honor.

18             MR. BOHRER:  No, your Honor.

19             THE COURT:  On the basis -- both counsel said "no" I

20   think simultaneously but both said "no".

21             On the basis of Mr. Neville's responses to my

22   questions, my observations of his demeanor here in court and

23   the representations of counsel, I find that he is fully

24   competent to enter an informed plea of guilty at this time.

25             Now, have you received a copy of the information

1    containing the preposed charges?

2              MR. BOHRER:  We have.

3              THE COURT:  Mr. Neville, have you seen that?

4              THE DEFENDANT:  Yes, I did.

5              THE COURT:  Have you read it?

6              THE DEFENDANT:  I have read it.

7              THE COURT:  Do you waive its public reading or would

8    you like me to read it out loud?

9              THE DEFENDANT:  I think we waive, your Honor, if

10   that's all right.

11             THE COURT:  Have you had enough chance to discuss with

12   your lawyers the charges to which you intend to plead guilty

13   and any possible defense to those charges?

14             THE DEFENDANT:  Yes, I have.

15             THE COURT:  Have they explained to you the

16   consequences of entering that guilty plea?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Are you satisfied with their

19   representation of you?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  All right.  Now, Ms. Griswold, my

22   understanding is that a colleague of yours is supposed to be

23   arriving with a waiver of indictment form; is that correct?

24             MS. GRISWOLD:  That's correct, your Honor.

25             THE COURT:  Do you have any idea of her whereabouts or

G5JAANEVP          Plea

1    timing?

2             MS. GRISWOLD:  I would have thought she would have

3    been back, your Honor.

4             THE COURT:  As would I which is why I started.

5             MS. GRISWOLD:  I apologize.  That is my fault.  I'm

6    not sure there's much I can do about it at moment, although,

7    the door is opening at the moment.

8             THE COURT:  As we speak, on queue.

9             (Ms. Magdo is present)

10            THE COURT:  Ms. Magdo has arrived with what I

11   understand to be the waiver of indictment form.  I'll give

12   counsel a minute to go over that with Mr. Neville.

13            (Pause)

14            MR. BOHRER:  Mr. Neville and I have signed the waiver,

15   your Honor.

16            THE COURT:  All right.  Mr. Neville, I have the waiver

17   now in my hand.  Before you signed this form or should I say

18   you signed a moment ago, did you discuss it with Mr. Bohrer?

19            THE DEFENDANT:  Yes, I did.

20            THE COURT:  Did you read it before you signed it?

21            THE DEFENDANT:  Yes, I did.

22            THE COURT:  Did Mr. Bohrer explain and discuss any

23   questions you had about the form?

24            THE DEFENDANT:  Yes, he did, your Honor.

25            THE COURT:  Do you know that you are under no

1   obligation to waive indictment?

2              THE DEFENDANT:  I do.

3              THE COURT:  Do you understand that if you did not

4   waive indictment and the government wished to prosecute you

5   further for the crimes charged in the information that it would

6   have to present those crimes to a grand jury which might or

7   might not indict you?

8              THE DEFENDANT:  I understand that.

9              THE COURT:  Do you understand that by waiving

10  indictment you are giving up your right to have these crimes

11  presented to a grand jury?

12             THE DEFENDANT:  Yeah, I do, your Honor.

13             THE COURT:  Do you understand what a grand jury is?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Does either counsel know of any reason

16  that I should not find the defendant has knowingly and

17  voluntarily waived his right to be indicted by a grand jury?

18             MS. GRISWOLD:  No, your Honor.

19             MR. BOHRER:  No, your Honor.

20             THE COURT:  All right.  I find that the defendant has

21  knowingly and voluntarily waived his right to be indicted by a

22  grand jury and I authorize the filing of the information.

23             I also have here, Mr. Neville, a written Advice of

24  Rights Form that appears to have been signed by you dated

25  today, May 19, 2016, and signed by Mr. Bohrer as well.  I'm

1  showing you page two of that form.  I don't know if you could

2  see it from there but did you sign that form?

3              THE DEFENDANT:  I did sign that form earlier today,

4  your Honor.

5              THE COURT:  All right.  I will mark this as Court

6  Exhibit One and provided it to the government to retain in its

7  possession after this proceeding.  Before you signed that form

8  did you read it?

9              THE DEFENDANT:  Yes, I did, your Honor.

10             THE COURT:  Before you signed that form did you

11 discuss it with your lawyers?

12             THE DEFENDANT:  Yes, I did, your Honor.

13             THE COURT:  Before you signed it did they explain it

14 to you and answer any questions that you may have had about it?

15             THE DEFENDANT:  They did so.

16             THE COURT:  All right.  Now I'm going to go over with

17 you many of the same things that are on the form just to ensure

18 that you understand what you are doing and the consequences of

19 what you are doing.

20             Under the Constitution and laws of the United States

21 you have the right to plead not guilty to the charges in the

22 information.  Do you understand that?

23             THE DEFENDANT:  Yes, I do, your Honor.

24             THE COURT:  If you did plead not guilty you would be

25 entitled to a speedy and public trial by a jury on those

1    charges?  Do you understand that?

2              THE DEFENDANT:  I understand that, your Honor.

3              THE COURT:  At that trial you would be presumed to be

4    innocent and you would not have to prove that you were

5    innocent.  Instead, the government would be required to prove

6    your guilt by competence evidence beyond a reasonable doubt

7    before the jury could find you guilty.  Do you understand that?

8              THE DEFENDANT:  I do, your Honor.

9              THE COURT:  In order to find you guilty a jury of 12

10   people would have to agree unanimously that you were guilty.

11   Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  At that trial and at every stage of your

14   case you would be entitled to be represented by a lawyer and if

15   you could not afford a lawyer, one would be appointed at public

16   expense free of costs to represent you.  Do you understand

17   that?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  During a trial the witnesses for the

20   government would have to come to court and testify in your

21   presence and your lawyer would have an opportunity to

22   cross-examine them and object to any evidence offered against

23   you.  You would also have the right to or opportunity to

24   present evidence in your own defense if you so desired and you

25   would have the right to have subpoenas issued or other process

1    used to compel witnesses to come to court and testify in your

2    defense.  Do you understand all that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  At trial you would have the right to

5    testify if you chose to do so but you would also have the right

6    not to testify.  And if you chose not to testify then no one

7    including the jury could draw any inference or suggestion of

8    guilt from the fact that you did not testify.  Do you

9    understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Before trial you would have the right

12   under the Federal Rules of Criminal Procedure to receive

13   discovery from the government.  You would also have an

14   opportunity to seek suppression or exclusion of evidence that

15   the government might use against you at trial.  Do you

16   understand those things?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  If you were convicted at trial you would

19   have the right to appeal that verdict.  Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  If you plead guilty you will also have to

22   give up your right not to incriminate yourself because I may

23   ask you questions about what you did in order to satisfy myself

24   that you are guilty as charged and you will have to admit and

25   acknowledge your guilt.  Do you understand that?

1           THE DEFENDANT:  I do.

2           THE COURT:  If you plead guilty and if I accept your

3    guilty plea you will give up your right to a trial and the

4    other rights that we have just discussed other than your right

5    to a lawyer which you keep whether or not you plead guilty but

6    there will be no trial and I will enter a judgment of guilty

7    and sentence you on the basis of your plea after I have

8    received a presentence report prepared by the United States

9    probation department and any submissions that I get from the

10   lawyers.  There will be no appeal with respect to whether you

11   did or did not commit the offenses to which you are pleading

12   guilty or with respect to whether the government could or could

13   not use evidence that it has against you.  Do you understand

14   all that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Even now as you are entering this plea you

17   have the right to change your mind to plead not guilty and to

18   proceed to trial on the charges in the information.  Do you

19   understand that?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Do you understand each and every one of

22   the rights that we have just discussed?

23           THE DEFENDANT:  I do.

24           THE COURT:  Are you willing to give up your rights to

25   a trial and the other rights that I have discussed with you?

1              THE DEFENDANT:  I am.

2              THE COURT:  Now, do you understand that you are

3      charged in the information in five counts that Count One

4      charges you with conspiring to obstruct justice in violation of

5      Title 18 U.S.C. Section 371.

6              Count Two charges you with obstruction of justice or

7      aiding and abetting the same in violation of Title 18 U.S.C.

8      Sections 1503 and 2.

9              Count Three charges you with conspiring to commit bank

10     fraud in violation of Title 18 U.S.C. Section 1349.

11             Count Four charges you with participating in a scheme

12     to commit bank fraud or aiding and abetting the same in

13     violation of Title 18 U.S.C. Sections 1344 and 2.

14             And finally, Count Five charges you with making false

15     statements to law enforcement officers in violation of Title 18

16     U.S.C. Section 1001.

17             Do you know that those are the charges?

18             THE DEFENDANT:  I do, your Honor.

19             THE COURT:  Ms. Griswold or Ms. Magdo, will you please

20     state the elements of those offenses.

21             MS. GRISWOLD:  Yes, your Honor.

22             Count One conspiracy to obstruct justice has three

23     elements.

24             First, there existed an agreement between two or more

25     people to violate a law of the United States.

1          Second, the defendant knowingly and willfully became a

2     member of the conspiracy.

3          And third, at any time during the existence of the

4     conspiracy, any one of the conspirators committed an overt act

5     in furtherance of that agreement.

6          Count Two, obstruction of justice has three elements.

7          First, there was a pending judicial or grand jury

8     proceeding constituting the administration of justice.

9          Second, the defendant knew or had notice of the

10    proceeding.

11         And third, the defendant acted with the wrongful

12    intent or improper purpose to influence the judicial or grand

13    jury proceeding whether or not the defendant is successful in

14    doing so.

15         Count Three, conspiracy to commit bank fraud.

16         First, that the defendant agreed with at least one

17    other person to commit the substantive offense of bank fraud.

18         And second, that the defendant knowingly and willfully

19    became a member of the conspiracy.

20         Count Four, bank fraud.

21         First, the defendant knowingly executed a scheme to

22    obtain the money, funds or other property owned by or under the

23    control of a bank by means of materially false or fraudulent

24    presentences, representations or promises.

25         And second, at the time of the execution of the scheme

1    the bank involved had its deposits insured by the Federal

2    Deposit Insurance Corporation

3            And finally, Count Five, false statements has four

4    elements.

5            First, that the defendant made a false statement;

6            Second that the statement was material;

7            Third that the statement was within the jurisdiction

8    of a department or agency of the United States;

9            And fourth, the statement was made knowingly and

10   willfully.

11           Thank you.

12           THE COURT:  Mr. Neville, do you understand that if you

13   were to go to trial the government would have to prove each of

14   those elements beyond a reasonable doubt and would also have to

15   prove venue in this district as to each of those charges but

16   only by a preponderance of evidence, that it would have to

17   prove each of those things before a jury could find you guilty;

18   do you understand that?

19           THE DEFENDANT:  Yes, I do, your Honor.

20           THE COURT:  All right.  Let me tell you now about the

21   maximum possible penalties for these crimes.  The "maximum"

22   means the most that could possibly be imposed upon you.  It

23   doesn't necessarily mean that that is the sentence you will

24   receive but you have to understand that by pleading guilty you

25   are exposing yourself to a combination of punishments up to the

1   maximums that I am about to tell you.  Do you understand that?

2              THE DEFENDANT:  I do.

3              THE COURT:  Let me begin with the possible

4   restrictions upon your liberty.  The maximum term of

5   imprisonment for Count One is five years in prison; for Count

6   Two is ten years in prison; for Counts Three and Four is 30

7   years in prison for each count; and for Count Five is also five

8   years in prison.  Those terms could be followed by three years

9   of supervised release on Counts One, Two and Five and five

10  years of supervised release on Counts Three and Four.

11             "Supervised release" means that you would be subject

12  to supervision by the probation department.  There would be

13  rules of supervised release that you would be required today

14  follow and if you violated any of those rules, you could be

15  returned or sent to prison without a jury trial to serve

16  additional time with no credit for time spent on your

17  underlying sentence and no credit for time spent on post

18  release supervision.  Do you understand all that?

19             THE DEFENDANT:  I do.

20             THE COURT:  You should understand that there is no

21  parole in the federal system in this country which means that

22  if you were sentenced to prison you would not be released early

23  on parole.  There is a limited opportunity to earn credit for

24  good behavior.  If you were sentenced to prison you would have

25  to serve at least 85 percent of the time to which you were

1   sentenced.  Do you understand that?

2          THE DEFENDANT:  I do, your Honor.

3          THE COURT:  In addition to those restrictions on your

4   liberty the maximum possible punishment also includes certain

5   financial penalties.

6          First, the maximum allowable fine is the greatest of a

7   certain amount or twice the gross pecuniary or financial gain

8   derived from the offense or twice the gross financial or

9   pecuniary loss to someone other than you as a result of the

10  offense whichever is greatest.  That amount is a certain amount

11  that I mentioned is $250,000 for Counts One, Two and Five and

12  $1 million for Counts Three and Four.  In addition, I could

13  order restitution to any person or entity injured as a result

14  of your criminal conduct.

15         Ms. Griswold, does the government have a calculation

16  of what the likely restitution would be, if any, here?

17         MS. GRISWOLD:  Not at this time, your Honor.

18         THE COURT:  All right.  I can also order you to

19  forfeit all property derived from the offense or used to

20  facilitate the offense.  In that regard I note that in a plea

21  agreement that we will discuss shortly with the government that

22  you admit to the forfeiture allegations in the information with

23  respect to Counts One through Four.  And finally I must order a

24  mandatory special assessment of $100 per count.

25         Do you understand that those are the maximum possible

1   penalties?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that it is possible

4   taking all five counts together that you could be sent to

5   prison for a total of 80 years in prison.  Do you understand

6   that?

7              THE DEFENDANT:  I do, your Honor.

8              THE COURT:  I take it you are not a citizen of the

9   United States; is that correct?

10             THE DEFENDANT:  No, I am not.

11             THE COURT:  Do you know that as a result of your

12  guilty plea there may be adverse affects on your immigration

13  status that, for example, you may be detained by the

14  immigration authorities following completion of any criminal

15  sentence, that you may be removed or deported from the United

16  States, that you may be denied citizenship or denied admission

17  to the United States in the future?  Do you know that those are

18  some of the possible immigration consequences of a guilty plea?

19             THE DEFENDANT:  I do, your Honor, yes.

20             THE COURT:  Have you discussed the possible

21  immigration consequences of your plea with your lawyers?

22             THE DEFENDANT:  I have, indeed.

23             THE COURT:  Do you know that as a result of your

24  guilty plea you may also lose certain valuable civil rights in

25  this country to the extent that you have them or could

1    otherwise obtain them now, such as right to vote, the right to

2    hold public office, the right to serve on a jury and the right

3    to possess any kind of firearm?

4              THE DEFENDANT:  I understand that.

5              THE COURT:  Are you serving any other sentence or

6    being prosecuted in any other court at this time?

7              THE DEFENDANT:  No, I am not.

8              THE COURT:  Do you understand that if your lawyer or

9    anyone else has attempted to predict for you what your sentence

10   will be in this case that their predictions could be wrong?  Do

11   you understand that?

12             THE DEFENDANT:  Yes, your Honor, I do.

13             THE COURT:  It's important for you to understand that

14   no one, not your lawyer, not the lawyers for the government, no

15   one can give you any promise or assurance of what your sentence

16   will be.  And that is because your sentence will be determined

17   by me and by me alone.  And I am not going to do that today.

18   Instead, I will wait until I receive the presentence report

19   from the probation department that I mentioned earlier.  I will

20   do any own independent calculation of how the United States

21   Sentencing Guidelines apply to your case and consider any

22   departures from the guidelines range.  I will consider any

23   submissions I get from the lawyers and ultimately the factors

24   that are set forth in the statute Title 18 U.S.C. Section

25   3553(A) that govern sentencing.  And I will do all of that

1  before determining and imposing an appropriate sentence.  Do

2  you understand all of that?

3          THE DEFENDANT:  Thank you, your Honor.  Yes, I do.

4          THE COURT:  Have you discussed that process with your

5  lawyers?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  Now even if your sentence is different

8  from what your lawyers or anyone else has told you that it

9  might be, even if it's different from what you expect or hope

10  it would be and even if it is different from what is in the

11  plea agreement you will still be bound by your guilty plea and

12  you will not be allowed to withdraw your plea.  Do you

13  understand that?

14          THE DEFENDANT:  I do, yes.

15          THE COURT:  All right.  Now, I understand that there

16  is as I've mentioned a written plea agreement that you and your

17  lawyers have entered into with the lawyers for the government;

18  is that correct?

19          THE DEFENDANT:  I believe so, your Honor.

20          THE COURT:  All right.  Now, I have an original letter

21  plea agreement dated May 13, 2016, from Assistant United States

22  Attorneys Andrea Griswold and Christine Magdo to your lawyer,

23  Mr. Bohrer.  It appears to have been signed by you dated today

24  as well.  Showing you the last page of the plea agreement and

25  if you can see it from there, did you sign that earlier today?

1          THE DEFENDANT:  Yes, I did, your Honor.

2          THE COURT:  Before you signed the plea agreement did

3    you read it?

4          THE DEFENDANT:  Yes, I did, your Honor.

5          THE COURT:  Before you signed it did you discuss it

6    with your lawyers?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  And did you sign it in their presence

9    after you discussed it with them?

10          THE DEFENDANT:  Yes, I did.

11          THE COURT:  Did he explain it to you and answer any

12    questions that you may have had about the plea agreement?

13          THE DEFENDANT:  Yes, he has.

14          THE COURT:  Did you fully understand that plea

15    agreement before you signed it?

16          THE DEFENDANT:  I did, your Honor.

17          THE COURT:  All right.  Now, as I understand it,

18    pursuant to this plea agreement you have agreed to provide

19    certain cooperation to the government and in exchange if you do

20    that and abide by the other requirements in the agreement, the

21    government has agreed to file a letter on your behalf in

22    connection with your sentencing; is that your understanding?

23          THE DEFENDANT:  That is my understanding, your Honor,

24    yes.

25          THE COURT:  Now, do you understand that it is up to

1   the government, not to me, to decide whether the cooperation

2   that you provided the government has been good enough and

3   productive enough for the government to file that letter; do

4   you understand that?

5          THE DEFENDANT:  I understand, yes.

6          THE COURT:  Do you understand that even if the

7   government does file that letter and make a motion on our

8   behalf for a downward departure that it would ultimately be up

9   to me as the sentencing judge to decide what, if any, credit

10  you should get for your cooperation and ultimately to decide

11  what sentence is appropriate; do you understand that?

12         THE DEFENDANT:  Yes, I do, your Honor.

13         THE COURT:  Does this written plea agreement

14  constitute your complete and total understanding of the entire

15  agreement between you and the government?

16         THE DEFENDANT:  I believe it is, yes, your Honor.

17         THE COURT:  All right.  Are there any other agreements

18  or has anything been left out of this written plea agreement?

19         THE DEFENDANT:  No, your Honor.

20         THE COURT:  All right.  Mr. Bohrer, given I think

21  Mr. Neville has an English tendency if I may say so to be

22  somewhat polite but it can come out -- when he says he doesn't

23  believe so he just means "no".  But let me confirm with you --

24         MR. BOHRER:  I can confirm everything your Honor has

25  just said.

1           THE COURT:  All right.  Very good.  Other than what is

2     written in this agreement, Mr. Neville, has anyone made any

3     promises or offered you'd any inducement either to plead guilty

4     or to sign the agreement?

5           THE DEFENDANT:  No, your Honor.

6           THE COURT:  Has anyone threatened you or forced you to

7     plead guilty or to sign the agreement?

8           THE DEFENDANT:  No, your Honor.

9           THE COURT:  Has anyone made promise to you as to what

10    your sentence will be in this case?

11          THE DEFENDANT:  No, your Honor, no.

12          THE COURT:  All right.  Now, Mr. Neville, I would like

13    you to tell me in your own words what you did that makes you

14    believe that you are guilty of each of the charges in the

15    information.

16          THE DEFENDANT:  I was the group sales and marketing

17    director and president for an art and antiques dealing company

18    that operated in New York and London.  Bob Olins was one of my

19    clients.  On behalf of the company starting prior to 2011, I

20    held a number of pieces for Mr. Olins' antiques collection on

21    consignment.  I was working out of my company's office in New

22    York City.

23          As of February 2012, I understood that U.S. bank had a

24    lien on Mr. Olins' assets and that a court approval was

25    required before items in Mr. Olins' collection could be sold.

1    In May 2012, I learned that a court had appointed a receiver to

2    administer Mr. Olins' collection.

3            By the spring of 2012, I was aware that my company had

4    another client who was likely willing to pay in excess of $1

5    million for a set of vases in Mr. Olins' collection.  Prior to

6    May 2012, I was aware that the company had received a payment

7    in that amount for the vases.  I did not tell the receiver of

8    this payment pause I believed the receiver was willing to

9    accept much less for the vases.  I understood that the receiver

10   was required to obtain authority from a Court for permission to

11   sell the vases and I misled him about their value so that the

12   court would approve the sale at a price that was much lower

13   than $1 million.

14           Prior to the receiver's submission of the application

15   to the court, Mr. Olins and I agreed that if, with court

16   approval, we were able to obtain the vases from the bank for a

17   lower price than the company's client paid for them, Mr. Olins

18   would receive a benefit from the overage.  Pursuant to that

19   agreement and at Mr. Olins' request, after I learned that the

20   court had approved the sale in June of 2012, I directed the

21   company to send a wire transfer of a portion of the overage to

22   an account in the Isle of Man.  The company also retained some

23   of the overage.

24           In September 2015, when I spoke with law enforcement

25   officers about the Olins matter, I misrepresented certain

1   aspects of my involvement concerning the purchase and the sale

2   that I just described.  Specifically, I indicated that I did

3   not have the intent to mislead the receiver regarding the value

4   of vases and status of the sale to the third party purchaser

5   when, in fact, I did.

6              THE COURT:  All right.  Now, let me just ask you a

7   couple follow-up questions.  First, you indicated that you were

8   working in your company's New York City office.  Where was

9   that?

10             THE DEFENDANT:  On Madison Avenue.

11             THE COURT:  In?  Manhattan.

12             THE DEFENDANT:  In Manhattan.

13             THE COURT:  All right.  Second, you indicated that you

14  were aware of the court action in the appointment of a receiver

15  and that you misled the receiver with the understanding that

16  the receiver would seek court approval for the sale of the

17  vases; is that correct?

18             THE DEFENDANT:  Yes.

19             THE COURT:  So was it your understanding when you

20  provided that false information that is the information

21  concerning the value of the vases, that the receiver would

22  submit that information to the court in connection with seeking

23  approval for the sale?

24             THE DEFENDANT:  Can I just?

25             THE COURT:  Sure.

 1          (Pause)

 2          THE DEFENDANT:  Yes, your Honor.

 3          THE COURT:  All right.  Ms. Griswold, with respect to

 4  the bank fraud and conspiracy to commit bank fraud counts, I

 5  might be missing something but where is the bank here and I

 6  presume it is insured by the FDIC?

 7          MS. GRISWOLD:  Yes, your Honor.  AB and T Bank, it is

 8  located in Oklahoma.  The government would proffer that it is

 9  FDIC insured.  Just for clarification, receiver that the

10  defendant spoke about it is the USB bank, AB and T.  The

11  government would also note that the court approval that is

12  sought here was of a court located here in the Southern

13  District.  It was Judge Cote.

14          THE COURT:  And am I correct that AB and T Bank,

15  Mr. Olins had a debt to AB and T Bank, is that correct?  Some

16  of the money, presumably, would have gone to AB and T Bank?

17          MS. GRISWOLD:  That is correct.  AB and T Bank had a

18  first lien on the art and antiques collection.  And the SEC's

19  lean as indicated in the information was a second priority to

20  that collection.  So some of the money would have gone to AB

21  and T.

22          THE COURT:  Mr. Neville, did you understand some of

23  the money was supposed to go to ABT and to the bank that had

24  been appointed to as receiver?

25          THE DEFENDANT:  Yes, I did.

1           THE COURT:  Mr. Bohrer, is there any dispute that AB

2    and T is insured by the FDIC?

3           MR. BOHRER:  There is none.

4           THE COURT:  Mr. Neville, when you did those things did

5    you understand that what you were doing was wrong and against

6    the law?

7           (Pause)

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  All right.  Mr. Bohrer, do you know of any

10   valid defense that would prevail at trial or of any reason why

11   Mr. Neville should not be permitted to plead guilty?

12          MR. BOHRER:  No, your Honor.

13          THE COURT:  Ms. Griswold, any additional questions

14   that you would like me to ask of Mr. Neville?

15          MS. GRISWOLD:  No, your Honor.

16          THE COURT:  Would you please proffer and describe

17   briefly what the government's evidence would be and what it

18   would show if the defendant were to go to trial.

19          MS. GRISWOLD:  Yes, your Honor.

20          Were the defendant to go to trial the government would

21   show through testimonial evidence both from a representative of

22   AB and T as well as e-mails exchanged between AB and T, the art

23   and antiques dealers and others that the defendant entered into

24   an agreement with Mr. Olins to obtain, to defraud, misrepresent

25   the value of certain items from Mr. Olins' collection to the

1   Court and AB and T and in order to profit.  And that evidence

2   would as I said, include e-mails, testimony from law

3   enforcement, testimony from individuals from AB and T as well

4   as public court records.

5          THE COURT:  All right.  And what about with respect to

6   Count Five?

7          MS. GRISWOLD:  The evidence with respect to Count Five

8   would include testimony from law enforcement agent who was

9   present in the proffer sessions in which the defendant

10  misrepresented certain information in September and October of

11  2015 concerning his intent with respect to statements made to

12  the receiver.

13         THE COURT:  All right.  Do both counsel agree that

14  there is a sufficient factual basis for a guilty plea to each

15  of the counts?

16         MS. GRISWOLD:  Yes, your Honor.

17         MR. BOHRER:  No, your Honor.

18         THE COURT:  Does either counsel of know of any reason

19  that I should not accept the defendant's plea of guilty?

20         MS. GRISWOLD:  No, your Honor.

21         MR. BOHRER:  No, your Honor.

22         THE COURT:  Mr. Neville, because I acknowledge that

23  you are, in fact, guilty as charged in the information, because

24  I am satisfied that you know of your rights and including the

25  right to go to trial and that you are aware of the consequences

1    of your plea, including the sentence that could be imposed upon

2    you and because I find that you are knowingly and voluntarily

3    pleading guilty, I hereby accept your guilty plea and enter a

4    judgment of guilty on Counts One through Five of the

5    information.

6           The probation department will want to interview you in

7    connection with the presentence report that it will prepare.

8    If you choose to speak to the probation department it is

9    important that anything you say is truthful and accurate.

10   Among other things, that report is important to me in deciding

11   what sentence to impose upon you.  You and your lawyers will

12   have an opportunity to review the report prior to your

13   sentencing and I would urge you to review it with care and to

14   bring anything, any mistakes in the report or anything that you

15   would want to bring to my attention in connection with

16   sentencing to your lawyer's attention so that he can raise it

17   in the proper fashion.  Do you understand all that?

18           THE DEFENDANT:  Yes.  Thank you, your Honor.

19           THE COURT:  Mr. Bohrer, do you wish to be present in

20   connection with any interview?

21           MR. BOHRER:  Yes, your Honor.

22           THE COURT:  I'll order that no interview shall take

23   place until counsel is present.

24           Ms. Griswold, should I order a presentence report at

25   this time or hold off?

G5JAANEVP                    Plea

1          MS. GRISWOLD:  No, your Honor.  We would ask for a

2     control date six months out.

3          THE COURT:  All right.  I will set a control date

4     sentencing date but it will function as a control date,

5     September 8, 2016 at 3:30 in the afternoon.  That, obviously, I

6     presume that will need to be adjourned I am not going to order

7     a presentence report at this time.

8          Mr. Bohrer.

9          MR. BOHRER:  I consent to all of that, your Honor.

10          THE COURT:  OK.  I direct the government to provide to

11     the probation department its factual statement of the offense

12     within seven days of my ordering the presentence report and

13     defense counsel must arrange for the defendant to be

14     interviewed by probation within two weeks of the same.

15          In connection with my individual rules and practices

16     for criminal cases the defense submissions are due two weeks

17     prior to the sentencing date.  The government submission is due

18     one week prior to the sentencing date.  If as we get closer you

19     think it makes sense to flip the order of that, you can propose

20     that to me and I'm certainly open to that.

21          We do need to address the issue in question of bail.

22     I also think I may have neglected to say that I marked the plea

23     agreement Court Exhibit Two and I will provide that to the

24     government to retain in its possession.

25          Turning to the issue of bail, does the government have

1   a position with respect to bail?

2               MS. GRISWOLD:  Yes, your Honor.  The parties have

3   discussed and have a joint proposal for your Honor's

4   consideration.

5               THE COURT:  All right.

6               MS. GRISWOLD:  A one hundred thousand dollar personal

7   recognizance bond to be co-signed by one financially person,

8   particularly, Mr. Neville's wife.  She has already been

9   interviewed and approved by the U.S. Attorney's Office as a

10  financially responsible person.

11              In addition to those conditions, surrender of travel

12  documents and no new applications.  Travel would be restricted

13  to all of the districts of New York.  The defendant, as well as

14  the district of Connecticut and Massachusetts.

15              The defendant lives in Connecticut and we understand

16  that he has family and travel that his request is to extend to

17  Massachusetts and the other districts in New York and the

18  government has no issue with that.

19              Regular pretrial supervision.

20              THE COURT:  All right.  Mr. Bohrer.

21              MR. BOHRER:  As counsel indicated, we have had

22  discussions with the government and with your Honor's

23  indulgence, we would urge those conditions upon the Court.  And

24  I believe we have discussed since a co-signature is necessary,

25  having a period of time in which to accomplish that.  We had

1   discussed a week, if that suits your Honor.

2             THE COURT:  All right.  Ms. Griswold.

3             MS. GRISWOLD:  Yes, your Honor.

4             THE COURT:  All right.  I will accept the parties'

5   proposal and set bail with those conditions.  Defendant may be

6   released on his own signature with the remaining conditions to

7   be met by May 26.  That is, say the co-signing and surrender of

8   travel documents.

9             Mr. Neville, you should understand that you must abide

10  by those conditions of release.  And you should understand that

11  if you do not that that could have, first of all, you may be

12  guilty of additional crimes and subject to additional penalties

13  above and beyond what I described earlier but it also may have

14  negative consequences for you at the time of sentence for the

15  plea that you just entered.  Do you understand all that?

16            THE DEFENDANT:  I do understand, your Honor.

17            THE COURT:  You should also understand that you must

18  be in this courtroom on the date and time that I have set for

19  sentencing.  I did indicate that that date would likely be

20  adjourned but unless your lawyer advises you that it has been

21  adjourned, it is your obligation to be here.  If you are not

22  here on that appointed day and hour that you again may be

23  subject to prosecution for separate crimes and subject to

24  penalties above and beyond those that I described to you

25  earlier.  Do you understand that?

G5JAANEVP                    Plea

1          THE DEFENDANT:  I do, your Honor.  Thank you.

2          THE COURT:  All right.  Ms. Griswold, anything else

3   for the government?

4          MS. GRISWOLD:  No, your Honor.  Thank you.

5          THE COURT:  Mr. Bohrer?

6          MR. BOHRER:  Nothing further, your Honor.

7          THE COURT:  Assume there is no need to seal --

8          MS. GRISWOLD:  We have no requests in that regard.

9          THE COURT:  All right.  Hang on one moment please.

10         All right.  Very good.  We are adjourned.  Thank you.

11                          (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25